UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE CITY OF CHICAGO, *ex rel*, CHICAGO REGIONAL COUNCIL OF CARPENTERS, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, a voluntary association,<br><br>Plaintiffs,<br><br>v.<br><br>SOUND SOLUTIONS WINDOWS & DOORS, INC. *et al.*,<br><br>Defendants. | No. 09 C 6948<br><br>Magistrate Judge Mary M. Rowland |

**REPORT AND RECOMMENDATION**

In November 2009, the United States and the City of Chicago, *ex rel*, Chicago Regional Council of Carpenters, the United Brotherhood of Carpenters, and Joiners of America (Relator) filed a complaint against Sound Solutions Doors & Windows, Inc. and Ronald Spielman under the U.S. False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1, *et seq.*, and the City of Chicago False Claims Ordinance. The Relator's Complaint alleged that Sound Solutions and Spielman, who was Sound Solutions' president, knowingly and falsely claimed that Sound Solutions would utilize FCJ Real Estate Development Company Inc. as a Disadvantaged Business Enterprise (DBE) or a Minority-owned Business Enterprise (MBE) subcontractor for a percentage of the total con-

tract price when in actuality Sound Solutions and Spielman knew that FCJ would operate merely as a "pass through" company. Between 2006 and 2009, based on Defendants' false representations, the City approved at least six Residential Sound Insulation Program (RSIP) contracts to Sound Solutions.

In September 2014, the Court found both Sound Solutions and Spielman in default. (Dkt. 86) In May 2015, a default judgment was entered against Sound Solutions in favor of the City in the amount of $13,554,832, but because Spielman had filed for bankruptcy, no judgment could be sought from him at that time. (Dkt. 112, 113, 114, 115, 180). In October 2015, the bankruptcy court lifted the automatic stay, permitting the City to seek judgment against Ronald Spielman. (Dkt. 123). The City now moves for entry of a default judgment in the amount of $13,554,832, jointly and severally with Sound Solutions, against Ronald Spielman.[1] For the reasons stated below, the Court recommends that the motion be granted.[2]

## I. BACKGROUND

The RSIP was a program that provided sound insulation, including the installation of sound-proof windows and doors, for homes in the communities surrounding O'Hare International Airport. Private contractors that bid for RSIP contracts were

---

[1] In January 2017, the United States and Spielman entered into a settlement agreement, pursuant to which Spielman agreed to the entry of a consent judgment in favor of the United States in the amount of $250,000. (Dkt. 171, 172).

[2] Due to a $323.99 calculation error, as discussed below, the Court recommends that default judgment be entered in the amount of $13,554,508.01, slightly less than that requested by the City.

required to commit to a "good faith effort" to expend "contract specific goals" on DBEs or MBEs if awarded a contract.

Between 2006 and 2008, the City solicited bids for RSIP Contract Nos. 17362, 11996, 12009, 14984 and 14985 (collectively, RSIP Contracts). Contract No. 17362 required a DBE and Nos. 11996, 12009, 14984 and 14985 required MBEs to serve as subcontractors and to be paid at least a set percentage of the contract award. Sound Solutions was awarded the contracts having identified FCJ as the subcontractor that would fulfill its DBE and MBE requirements. However, FCJ was a minority-pass-through company, not a valid DBE or MBE. Knowing that there was no valid DBE or MBE participation in the actual performance of the contracts, each claim for payment by Sound Solutions was a false claim. Based upon the entry of default, the undisputed record establishes 38 individual false claims during the course of the contracts.

## II. DISCUSSION

### A. Default Proceedings

A default proceeding involves a two-step process: "the establishment of the default, and the actual entry of a default judgment." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). "Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." *Id.* Upon entry of the default, the well-pleaded allegations of the complaint relating to liability are taken as true. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007). A default judgment may be entered without a hearing on damages if "the amount claimed is

liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Id.* (citation omitted). Plaintiffs have a "relaxed burden of proof" and "broad latitude" in quantifying damages. *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 759 (7th Cir. 2011).

**B. False Claims Act**

The City seeks to recover damages pursuant to the Chicago False Claims Ordinance, M.C.C. §§ 1-22-010–060. The parties agree that the Chicago False Claims Ordinance is modeled upon, and provides the same manner of relief, as the federal False Claims Act (Act), 31 U.S.C. §§ 3729–3732. (Dkt. 149 at 2; Dkt. 152 at 1). Thus, case law interpreting the Act may be used to interpret the Chicago False Claims Ordinance. *See U.S. ex rel. Batty v. Amerigroup Illinois, Inc.*, 528 F. Supp. 2d 861, 871 n.8 (N.D. Ill. 2007); (accord Dkt. 135 at 9 n.2; Dkt. 149 at 2).

The Act, and the City's Ordinance, authorizes penalties of $5,000 to $10,000 per false claim plus three times the amount of actual damages sustained by the City. 31 U.S.C. § 3729(a). Courts have "considerable discretion in calculating damages and ascertaining the amount of the civil penalty component, within the statutory range." *Morse Diesel Int'l, Inc. v. United States*, 79 Fed. Cl. 116, 124 (2007). "The trial court, however, does not have discretion to decline to award treble damages, because the False Claims Act, as amended, provides for '*a* civil penalty . . . *plus* 3 times the amount of damages.'" *Id.* at 125 (quoting 31 U.S.C. § 3729(a)(2)) (emphasis added by the *Morse* court). "The legislative history is clear that Congress intended the imposition of significant civil penalties that would substantially strengthen

the Government's ability to deter fraud *and* regain financial losses resulting from fraud." *Id.* (citation omitted) (emphasis in original). "Actual damages are the difference in value between what the government bargained for and what the government received." *U.S. ex rel. Wall v. Circle C Const., LLC*, 813 F.3d 616, 617 (6th Cir. 2016).

In most False Claims Act cases, "damages are measured as they would be in a run-of-the-mine breach-of-contract case—using a 'benefit-of-the-bargain' calculation in which a determination is made of the difference between the value that the government received and the amount that it paid." *U.S. ex rel. Feldman v. van Gorp*, 697 F.3d 78, 87 (2d Cir. 2012); *see United States v. Woodbury*, 359 F.2d 370, 379 (9th Cir. 1966) ("Ordinarily the measure of the government's damages would be the amount that it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful."). "This method of calculation is employed, for example, when the government has paid for goods or services that return a tangible benefit to the government." *Feldman*, 697 F.3d at 87.

However, a different measure of damages is appropriate "where the defendant fraudulently sought payments for participating in programs designed to benefit third-parties rather than the government itself and the government received nothing of tangible value from the defendant." *Id.* at 88 (citation omitted). Under this so-called "taint" theory, the government is entitled to three times what it actually paid for the goods or services at issue. *Wall*, 813 F.3d at 617; *see Feldman*, 697 F.3d at 88; *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008).

**C. Analysis**

In his response, Spielman does not contest the amount of the statutory penalties—$190,000—sought by the City. (Dkt. 149 at 2). However, Spielman contends he should not be liable for any of the amounts paid for the work that was to be performed by an MBE or DBE or the trebling of those amounts because the City: (1) received every benefit that it paid for, (2) failed to prove the value of DBE and MBE participation in the RSIP Contracts, and (3) did not deduct the value it received from Sound Solutions in its damage calculations. (*Id.* at 4–9). The City's proposed damages calculation follows the taint method of assessing damages in a False Claim Act case, and, after careful consideration, the Court adopts it here for the following reasons.

### 1. *The City did not receive the benefits of its bargain with Sound Solutions and Spielman*

Spielman contends that because Sound Solutions completed the insulation work, the City received the full value of the contracts and suffered no damages. (Dkt. 149 at 4–6). But the City's interest in the RSIP Contracts was not limited to the installation of sound insulation in homes surrounding O'Hare Airport. The Chicago Municipal Code has long recognized that the City benefits from MBE and DBE participation: the City "has a compelling interest in preventing its tax dollars from perpetuating a market so flawed by past discrimination that it restricts existing minority- and women-owned businesses from unfettered competition in the Chicago construction market." M.C.C. § 2-92-660(q). That is why the RISP Contracts put Defendants on notice that if Sound Solutions and Spielman failed to comply with the

MBE or DBE requirements, the City would be materially damaged. (Dkt. 1-1 at 15; Dkt. 1-2 at 1, 11).

So, even though if Sound Solutions performed the installation, its false statements mean that the City was denied its goal of developing and sustaining DBEs and MBEs. Thus, installing the sound insulation did not provide the consideration for which the City bargained—supporting MBEs and DBEs. "In other words, when a third-party successfully uses a false claim regarding how a grant will be used in order to obtain the grant, the government has entirely lost its opportunity to award the grant money to a recipient who would have used the money as the government intended." *Feldman*, 697 F.3d at 88.

The Seventh Circuit examined the appropriate measure of restitution in a False Claim Act case involving an MBE set-aside fraud in *United States v. Leahy*, 464 F.3d 773, 793–94 (7th Cir. 2006). In *Leahy*, the defendants created phony businesses to get City cleaning contracts set aside for companies operated by women and minorities. *Id.* at 778–81. The defendants argued, as Spielman does here, that because the contracts were completely and competently performed, the City had received full benefits and restitution was not warranted. *Id.* at 793. The Seventh Circuit disagreed, finding that "[w]hile [defendants'] companies provided valuable cleaning services, they . . . [did not] achieve Chicago's desired goal of developing and sustaining an emerging minority business." The court concluded that, while the defendant performed the cleaning services required under the contracts, "performing

the contract adequately did not provide the consideration for which Chicago bargained: it did not support the proper minority or women businesses." *Id.* at 793–94.

Spielman relies on *Wall* to support his argument that because Sound Solutions completed the insulation work, the City suffered no damages. In *Wall*, the government contracted with defendant to build several dozen warehouses at an Army base. 813 F.3d at 617. The defendant built the buildings but failed to pay its electricians the wages specified in the government contract. *Id*. The Sixth Circuit determined that because the government "got the buildings but not quite all of the wages," the actual damages were limited to $9,916—"the difference in value between what the government bargained for and what the government received." *Id.* Here, on the other hand, the City bargained for the sound insulation for homeowners, which can be calculated, but also the intangible benefit of MBE and DBE participation, which is inherently impossible to calculate. Unlike in *Wall*, where the government received completed buildings, the City, as opposed to homeowners, received no direct benefit from the sound insulation. Further, the City received no benefit in terms of supporting MBE and DBE businesses. *Cf. Wall*, 813 F.3d at 618 (noting that its decision would be different in a case "where some unalterable moral taint makes the goods worthless to the government"). These distinctions make the *Wall* analysis unpersuasive to the Court.

### 2. *The actual loss cannot be quantified*

Spielman believes the Court should refuse to award the amount of monies paid for work that was supposed to have been paid to MBEs and the DBE, trebled, be-

cause the City has failed to establish the value of guaranteeing business to MBEs and DBEs as subcontractors on City-issued contracts. Spielman contends that the City should provide evidence of the value placed on the inclusion of MBEs and DBEs in the RSIP Contracts. (Dkt. 149 at 6–8). But the Seventh Circuit has concluded that the "the actual loss to Chicago from not enlisting a true MBE or WBE for these contracts is inherently difficult to quantify." *Leahy*, 464 F.3d at 793; *cf. U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 473 (5th Cir. 2009) (the Government's benefit of awarding money to eligible small businesses "is impossible to calculate").[3] The Court rejects Spielman's argument.

### 3. *The Court is not persuaded to deduct from the damage calculation for the work performed*

Despite Sound Solutions completing the sound insulation work, the City is entitled to damages equaling the full amount paid that was meant for MBEs and the DBE subcontractors because of Spielman's fraudulent conduct, trebled. Spielman contends that the City should deduct the value received from the sound insulation work performed by Sound Solutions. (Dkt. 149 at 8–9). But, as discussed above, the City, as opposed to homeowners, received *no* tangible benefits from the RISP Contracts. Because there was no tangible benefit to the City and the intangible benefit is near impossible to quantify, the appropriate damages are the amount the City paid to Sound Solutions that was meant to be paid to the MBEs or DBE.

---

[3] Because the value to the City of having MBEs and DBEs included in the RSIP Contracts is impossible to calculate, Spielman's request for "discovery regarding the City's damage calculations" (Dkt. 149 at 9–10) would be futile and is, therefore, denied.

Spielman relies on *United States v. Anchor Mortg. Corp.*, 711 F.3d 745 (7th Cir. 2013), to support his contention that the City should deduct the value of the sound insulation from its damages claim. (Dkt. 149 at 8–9). In *Anchor*, defendants provided false information in connection with home mortgage applications to be insured by the Federal Housing Administration. 711 F.3d at 747. The district court determined the government's damages by trebling the gross amount of its losses before subtracting any amounts that had been recovered. *Id.* at 748. The Seventh Circuit reversed, determining that the government must determine the net amount of its loss—the amount paid to lenders under the guarantees minus the value that the government realized from the real property that secured the loans—before trebling the damages. *Id.* at 748–49, 751. Here, on the other hand, the City paid sums of money meant for MBEs and a DBE. That money was not in fact used to support minority or disadvantaged businesses, rather the money was pocketed by Sound Solutions. If one-half of the money meant for minority owned business had gone to a minority owned business, this argument might have some merit. But the gross versus net amount analysis does not apply to the facts present here.

**D. Damages**

Under Contract Nos. 11996, 12009, 14984, and 14985, the City made payments to Sound Solutions for work it attested had been done by FJC in the amount of $3,969,756.93. (Dkt. 135-2 (Frame Aff.) at ¶ 158). Trebled, the damages awarded to the City under the False Claims Ordinance is **$11,909,270.79**. Under Contract No. 17362, the total amount of work that was not actually performed by employees of

the pass-through MBE was $2,425,395.36.[4] (Dkt. 135-1 (Williams Aff.) ¶ 25). Since the City provided only 20% of the funding for this contract, the amount is reduced to $485,079.07. Trebled, the damages owed the City under the False Claims Ordinance is **$1,455,237.22**. In addition, the City is entitled to statutory penalties for each of the 38 false claims, which at the minimum penalty level of $5,000 each, totals **$190,000**. Thus, the City is entitled to a judgment against Spielman in the amount of **$13,554,508.01**.[5]

---

[4] In an apparent typographical error, the City transposed this amount as $2,425,935.36. (*Compare* Dkt. 135 at 5, *with id.*, *and* Williams Aff. ¶¶ 14–21, 25 & Ex. 1–8).

[5] Because these amounts can be ascertained "from definite figures contained in the documentary evidence [and] detailed affidavits," no evidentiary hearing is required. *e360 Insight*, 500 F.3d at 602; (*see* Frame Aff.; Williams Aff.; Dkt. 135-1 & 135-2).

### III. CONCLUSION

For the reasons given above, the Court recommends that The City of Chicago's Motion for Entry of a Default Judgment [134] be **GRANTED** and that judgment be entered in the City of Chicago's favor in the amount of **$13,554,508.01**, jointly and severally with Sound Solutions, against Ronald Spielman. Counsel has 14 days from the date of service of this Court's Report and Recommendation to file objections with the Honorable Virginia M. Kendall. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

E N T E R:

Dated: May 11, 2017

MARY M. ROWLAND
United States Magistrate Judge